UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**MICHAEL BENTON**                                                                                     **PLAINTIFF**

v.                                                                                          **CIVIL ACTION NO. 3:17-cv-587-BJB**

**LOUISVILLE METRO GOVERNMENT et al.**                                         **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

Because Plaintiff Michael Benton failed to exhaust his administrative remedies before filing this lawsuit, the Court grants the motion for summary judgment filed by Defendants Louisville Metro Government; Louisville Metro Department of Corrections (LMDC); former LMDC Director Mark Bolton; current LMDC Director Dwayne A. Clark; Sergeants Graham, Higdon, and Smith; and Officers Ochoa, Woods, and Leyva (DN 45).

### I.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The moving party may discharge its burden by demonstrating the absence of evidence to support an essential element of the nonmoving party's case. *Id.* A moving party with the burden of proof who seeks summary judgment faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (internal quotation marks, citation,

and emphasis omitted). The party with the burden of proof "must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561. "Accordingly, summary judgment in favor of the party with the burden of persuasion 'is inappropriate when the evidence is susceptible to different interpretations or inferences by the trier of fact.'" *Green v. Tudor*, 685 F. Supp. 2d 678, 685 (W.D. Mich. 2010) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999)).

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C.] § 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's exhaustion requirement "give[s] prison officials a fair opportunity to address a prisoner's claims on the merits before federal litigation is commenced." *Mattox v. Edelman*, 851 F.3d 583, 592 (6th Cir. 2017). To exhaust a claim, a prisoner must proceed through all steps of a prison's or jail's grievance process because an inmate "cannot abandon the process before completion and claim that he has exhausted his remedies." *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999). The Supreme Court held in *Woodford v. Ngo*, 548 U.S. 81, 93 (2006), that failure to "properly" exhaust bars suit in federal court. "Proper exhaustion" means that the plaintiff complied with the administrative "agency's deadlines and other critical procedural rules," given that "no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91. A prisoner is required "to make affirmative efforts to comply with the administrative procedures," and the Court will analyze "whether those efforts to exhaust were sufficient under the circumstances." *Id.* at 590 (internal quotation marks and citations omitted). In *Jones v. Bock*, 549 U.S. 199, 216 (2007), the Supreme Court held that exhaustion under the PLRA is an

affirmative defense. "Non-exhaustion is an affirmative defense under the PLRA, with the burden of proof falling on the [moving party]." *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011);.

## II.

Plaintiff brought this 42 U.S.C. § 1983 action alleging that the above-named Defendants violated his constitutional rights on three occasions while he was housed at LMDC as a pretrial detainee.[1]  *First*, Plaintiff alleges that on October 13, 2016, three inmates jumped him and stabbed him in the eye, followed by officers slamming him on the floor despite his serious injury. After the incident, Plaintiff alleges that the officers neglected his injuries. *Second*, Plaintiff alleges that on April 13, 2017 Defendants Ochoa and Leyva punched and kicked him after he had been sprayed with "OC" pepper spray, despite him being on his stomach and in a choke hold, and refusing to allow him to wash off the spray in the shower (DN 99-1). *Third*, Plaintiff also alleges that Defendants failed to protect him from an assault by other inmates on March 23, 2017.

Defendants argue that Plaintiff failed to fully exhaust the grievance procedure for the October 13, 2016 and April 13, 2017 incidents. As to the March 23, 2017 incident, Defendants contend Plaintiff failed even to initiate the grievance procedure.

Defendants provide a copy of the prison's Inmate Grievance Procedures, the LMDC Departmental Policy 03-5.02 (DN 45-4). *Odom v. Bolton* ruled that the Inmate Grievance Procedure requires that "prior to filing a lawsuit, a prisoner must file a grievance, attempt to resolve the problem informally with some member of the facility staff, and, if dissatisfied with

---

[1] At the time Plaintiff filed his complaint, he was represented by counsel. He is now proceeding *pro se*.

the resolution (or lack thereof), appeal in writing to the director." No. 3:17-CV-398-CRS, 2020 WL 417780, at *2 (W.D. Ky. Jan. 27, 2020).

Meka Wingate, the LMDC custodian of grievances, states she reviewed Plaintiff's grievances, including "one grievance directly related to his complaint of excessive force (April 13, 2017) being used against him by Officers of LMDC, which was denied, and he did not file an appeal of that decision." Wingate Affidavit (DN 45-6).[2] She also states that Plaintiff "filed one grievance related to the alleged October 13, 2016 incident, which was incorrectly grieved." *Id.* Plaintiff, according to Wingate, "did not file a revised grievance or appeal the denial of his grievance." *Id.*

In response to the summary-judgment motion, Plaintiff argues that he "filed grievances, appeals to [the] director and reports to Frankfort all without any response nor did [LMDC] ever sign the bottom or top of grievance stating they returned the grievance to myself for appeals showing clearly that they in fact withheld these grievances to avoid litigation." Response (DN 85) at 1. He asserts that "[p]roof of all can be proved by simply comparing grievances and signatures from now and 2018 and 2019," because a "signature was forged onto the grievances." *Id.* But he does not explain what signature he is referring to. He also states that "[a]t trial I am ready to present all evidence toward the jurors showing the manipulation by the Defendants [and] the constant attempts to avoid and cover up incidents instead of upholding the law." He does not attach any exhibits or supporting evidence to his response, and his response is not made under penalty of perjury.

---

[2] Defendants filed a copy of Plaintiff's grievance of the April 13, 2017 incident and the response (DN 99) per the Court's Order to do so (DN 98).

In their reply (DN 87), Defendants state that LMDC used an electronic system to track all of Plaintiff's grievances, which they have provided to him.[3] They explain that the electronic "xjail" system does not include signatures. They argue that Plaintiff failed to provide any proof of the appeals that he said he filed to the Director or to support his allegations that grievances were not processed and that signatures were forged. They also point out that Ms. Wingate states in her sworn affidavit that Plaintiff did not appeal.[4]

### III.

#### *A. The October 13, 2016, and April 13, 2017, incidents*

It is undisputed that Plaintiff filed grievances related to the October 13, 2016, and April 13, 2017 alleged excessive-force incidents. The question is whether Plaintiff fully exhausted the grievance process.

#### *1. October 13, 2016 incident*

This grievance describes Plaintiff being jumped and stabbed in the eye by three inmates, followed by officers slamming him on the floor despite his serious injury (DN 45-3). The grievance then refers to officers' failure to "go get [his] property," and complains of three days of neglect "by staff and medical" following being "jumped" by the other inmates. *Id*. The grievance shows that plaintiff signed it on October 17, 2016. The undated response written on that grievance form stated it was "non grievable[;] 1 issue per grievance." *Id*.

---

[3] Defendants initially filed a reply after Plaintiff filed a "motion of appeal" (DN 49), which Defendants interpreted to be a response to the summary-judgment motion. They were permitted to file a supplemental reply (DN 87) after Plaintiff filed his response to their summary-judgment motion. Only the supplemental reply is relevant here.

[4] Attachments to the complaint include grievances and grievance-appeal forms signed by Plaintiff, letters written by Plaintiff's former counsel to the Kentucky Department of Corrections (KDOC), and a hearsay statement from a fellow inmate about a counselor's purported response to one of Plaintiff's grievances (DN 1-1, 1-2). Because neither side cites these materials in support of their positions on summary judgment, the Court need not consider them on summary judgment. *See* Fed. R. Civ. P. 56(c).

The summary-judgment record doesn't support Plaintiff's position that he filed or attempted to file an appeal in July 2017, or otherwise exhausted the grievance process. According to the grievance policy attached to the summary-judgment motion, a "grievance shall pertain to one (1) issue" (DN 45-4, LMDC Inmate Grievance Procedures 03-5.02(VI)(G)(1)(d)). The grievance form attached to Defendants' motion for summary judgment indicates that it was rejected as containing more than one issue. Plaintiff offers no evidence or argument to the contrary. A grievance that violated grievance procedures by including more than one issue does not properly exhaust a plaintiff's administrative remedies. *See, e.g.*, *Richmond v. Settles*, 450 F. App'x 448, 457 (6th Cir. 2011) (holding that grievance was not properly exhausted because it was returned to him for improperly addressing multiple issues and the plaintiff did not correct and resubmit his grievances); *Jones v. Parrish*, No. 1:16-CV-25, 2016 WL 4440668, at *4 (W.D. Mich. July 26, 2016), *report and recommendation adopted*, No. 1:16-CV-25, 2016 WL 4431338 (W.D. Mich. Aug. 22, 2016) (no exhaustion because a grievance included "numerous claims" in violation of prison policy requiring "one (1) issue per grievance").[5]

Furthermore, Plaintiff attached no evidence to his summary judgement response to support his assertion that he did file "appeals to [the] director."[6] His response insinuates that Defendants must have destroyed records or falsified his grievances, but he offers no evidence or

---

[5] Again, Plaintiff attached several documents to his complaint that he did not cite in his summary-judgment brief. The court may, but need not, consider these materials on summary judgment. Fed. R. Civ. P. 56(c). Even treating that material as evidence properly before the Court, however, these documents could not save Plaintiff's claims. On an appeal form dated July 12, 2017 (DN 1-2), Plaintiff stated that he received no response to the October 16th grievance. There is no indication on that form that it was filed with LMDC. The letter from Plaintiff's counsel dated September 19, 2017, to LMDC Director Bolton, also attached to the complaint (DN 1-2), indicates that in July 2017 Plaintiff was moving forward with appealing the grievance to Director Bolton because he had not received a response. Mr. Sattich's statement that on July 14, 2017, he heard "the counselor Mrs. Harris refuse to sign Michael Benton[']s grievance papers" could be read as referring to Plaintiff's appeal form dated July 12, 2017. None of this changes the outcome because the policy requires the inmate to seek review within 50 days of the filing of the initial grievance. DN 45-4, at 03-5.02(IV)(G)(2)(j). Thus, even if Plaintiff filed an appeal for his October 13, 2016 grievance in July 2017, his appeal would still be untimely under LMDC's grievance policy.

[6] The documents Plaintiff provided with his complaint show only appeals signed by him on or after July 12, 2017.

even explanation in support of these assertions. Additionally, Plaintiff's assertion that he filed "reports to Frankfort" is irrelevant to Defendants' exhaustion defense, since LMDC's grievance process does not involve any appeal or report that would be submitted to state officials in Frankfort. "[P]roper exhaustion of administrative remedies . . . 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Woodford*, 548 U.S. 81, 90 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in *Pozo*). Accordingly, the Court holds that Plaintiff failed to exhaust his administrative remedies regarding the October 2016 incident.

2. *April 13, 2017 incident*

This grievance alleges that Defendants Ochoa and Leyva punched and kicked the Plaintiff after he had been sprayed with "OC" pepper spray, and refused to allow him to wash off the spray in the shower (DN 99-1). The prison sent a grievance response to the plaintiff on August 17, 2017, claiming that Plaintiff had refused to return to his cell; after reasoning failed, force was used, including the OC spray, but Plaintiff still refused and fought with officers; after Plaintiff was returned to his cell he was too combative to be allowed out of his cell to shower; and that "medical" came to flush his eyes and wash off the affected area (DN 99-2). Plaintiff cited no evidence at the summary-judgment stage that he appealed this decision or otherwise exhausted his remedies. So the Court holds that Plaintiff failed to exhaust his administrative remedies regarding the April 2017 incident.[7]

---

[7] As with the October incident, Plaintiff attached to his complaint an LMDC grievance appeal, which he signed on September 7, 2017. He asserts that he had filed grievances to "grievance committee, jailer, jail, and now to Frankfort with no response so far." (DN 45-2). He also attached a letter from his former counsel referencing appeal efforts being made in July 2017. As noted, LMDC grievance procedures require and inmate file an appeal no later than 50 days after filing the grievance. July is more than 50 days from the filing of the April grievance.

### *B. The March 23, 2017 incident*

No grievance related to the alleged March 23, 2017 incident of failure to protect was attached to the summary-judgment motion (or to the complaint, for that matter). Ms. Wingate avers that the grievances attached to the motion for summary judgment represent all of the grievances filed by Plaintiff. Defendants do attach a grievance form dated April 10, 2017, which refers to incidents on March 23, 2017, and March 27, 2017, but that grievance's entire focus is property Plaintiff lost due to those incidents (DN 45-3), not the complained-of conduct from this incident. He begins the grievance: "I lost a lot of property due to the last two incidents on 3-23-17 and 3-27-17. All together with clothing from commissary and food I lost $210[.]" *Id*. He requests compensation for the loss of his property. *Id*.

The grievance policy provides that a "grievance shall include all aspects of the issue that the grievant wants to be addressed." DN 45-4, at 03-5.02(IV)(G)(1)(f). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218. The Court concludes that Plaintiff did not grieve the March 23, 2017, incident as it related to his claim of failure to protect. *See, e.g.*, *Sublett v. Howard*, No. CV 0:18-084-HRW, 2019 WL 4601837, at *8 (E.D. Ky. Sept. 23, 2019), *aff'd*, No. 19-6094, 2020 WL 5793101 (6th Cir. June 25, 2020) (applying a similar prison grievance policy requiring the inclusion of all aspects of the issue grieved and concluding that the policy meant a retaliation claim was unexhausted where the grievance only explained a single discrimination claim). Therefore, Plaintiff's claim based on the March 23, 2017, incident must be dismissed for failure to exhaust.

**IV.**

Because the Court concludes that Defendants have met their burden to show that Plaintiff did not fully exhaust his administrative remedies, and because Plaintiff has failed to identify any genuine issue of material fact, the Court **GRANTS** Defendants' motion for summary judgment (DN 45).

The Court **DIRECTS** the Clerk of Court to terminate Defendants Louisville Metro Government; Louisville Metro Department of Corrections; Director Mark Bolton; Director Dwayne A. Clark; Sergeants Graham, Higdon, and Smith; and Officers Ochoa, Woods, and Leyva. This action continues against the remaining Defendants.

Date:


cc: Plaintiff, *pro se*
 Counsel of record
B213.009